IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MIA A. BIRD, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 21-cv-747 |
| MASTERY CHARTER SCHOOLS, | : | |
| *Defendant.* | : | |

| | | |
|---|---|---|
| MIA A. BIRD, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| v. | : | No. 21-cv-3239 |
| NUTRITION, INC, D/B/A THE NUTRITION GROUP, | : | |
| *Defendant.* | : | |

**MEMORANDUM OPINION**

**Goldberg, J.**                                                                                                          **June 1, 2022**

Plaintiff Mia Bird ("Plaintiff") has sued Defendant Mastery Charter Schools ("Mastery") under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-1 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § § 951-963, for discrimination based on race, color, and gender. She also brings claims for hostile work environment and retaliation. Mastery moves to dismiss the Amended Complaint in its entirety. For the following reasons, the motion will be granted in part and denied in part.

1

I.  **FACTUAL AND PROCEDURAL BACKGROUND**[1]

The following facts are taken from Plaintiff's Amended Complaint:

- Plaintiff, a black woman, began working for food services and facilities management contractor, Nutrition Inc. d/b/a "The Nutrition Group" ("TNG") in August of 2013 as a Food Service Director. TNG is a named defendant in this lawsuit. (Am. Compl. ¶ 10-11, ECF No. 9.)

- TNG provides food services to schools in Pennsylvania through the COMPASS system (Commonwealth of Pennsylvania Access to Social Services.) (Id. at ¶ 15.)

- TNG has a contract with Defendant Mastery in which TNG provides school food services to Mastery under the state/federal School Nutrition Program ("SNP"). Mastery operates 24 charter schools in Philadelphia and New Jersey. (Id. at ¶ 16.)

- Plaintiff began her employment with Mastery mid-way through the 2016-2017 school year. She worked alongside Fletcher Vollmer, a white male, who was the Regional Manager ("RM") representing Mastery as of 2015. Plaintiff managed 10 Mastery accounts at that time. (Id. at ¶ 19.) Plaintiff describes herself as "a TNG representative at Mastery" in the Amended Complaint. (Id. at ¶ 17.)

- At the beginning of the 2017-2018 school year, Plaintiff became the sole RM managing the school cafeteria services for the 10 Mastery accounts. (Id. at ¶ 21.)

- In 2018, Mastery "required" Plaintiff to become the Resident Regional Manager ("RRM") at Mastery. With her new title as RRM, Mastery provided Plaintiff with a physical onsite office in its central office building. (Id. at ¶ 23.) Because Mastery named Plaintiff as an RRM, Plaintiff believed Mastery "did not want [her] to manage other school accounts but rather devote most of her time to Mastery." (Id. at ¶ 24.) Plaintiff managed 13 Mastery accounts as RRM from 2018-2020. (Id. at ¶ 28.) She also served accounts as RM for TNG at two other schools during that time. (Id. at ¶ 29.)

- Plaintiff had three supervisors at Mastery during the 2019-2020 school year: John Buttil, Meagan Covino, and Christine Cornelius. All three supervisors are white. Plaintiff allegedly witnessed her supervisors treat people differently based on their race while working at Mastery. (Id. at ¶ 48.) Specifically, Plaintiff witnessed, as well as personally experienced, the following:

    o Buttil, Covino, and Cornelius routinely ignored Plaintiff's advice regarding food service and COVID-19 safety protocols. (Id. at ¶ 49, 77.)

---

[1] In deciding a motion under Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief. Atiyeh v. Nat'l Fire Ins. Co. of Hartford, 742 F. Supp. 2d 591, 596 (E.D. Pa. 2010).

2

- o Covino made comments to Plaintiff's co-worker when a building engineer failed to respond to a work order, stating Covino would follow up with the engineer "because being a white woman" Covino knew "how to get what she needed from a white man." (Id. at ¶ 50.)

- o Cornelius made demeaning statements to kitchen staff and mistreated students at a Mastery school. The students and kitchen staff were black. (Id. at ¶ 51.)

- o Cornelius denied a black co-worker of Plaintiff's, Chris Caswell, the opportunity to become a food service director for a third school. (Id. at ¶ 55.)

- o Plaintiff suggested that a black co-worker, Erica Hurtt, be chosen to fill a recent opening for a food service director position. Buttil responded with hesitation, stating that they maybe should not give Hurtt the job because she was pregnant. However, Buttil did not make comments about other pregnant employees, such as Covino, who were white. (Id. at ¶ 57.)

- o Covino and Buttil both yelled at Plaintiff on separate occasions in February of 2020 regarding "an expectation [they] had not previously communicated to Plaintiff." (Id. at ¶ 59, 60.)

- o Covino micromanaged the food services directors who reported to Plaintiff, all of whom were protected class members (black), regarding health inspections. (Id. at ¶ 63.)

- o On February 28, 2020, Plaintiff went to the hospital after experiencing headaches, chest pains, muscle pain, dizziness, and blurred vision due to stressful work conditions at Mastery. (Id. at ¶ 68.)

- o On March 2, 2020, Plaintiff went to an Urgent Care because she was still experiencing physical symptoms of stress. Particularly, Plaintiff was stressed because supervisors at Mastery were not providing her with the information that she needed to draft the budget for the upcoming school year. (Id. at ¶ 69.)

- o From March 20, 2020 to April 24, 2020, Buttil and various Assistant Principals at Mastery made false statements that the schools were running out of food. Buttil reported this to TNG Vice President, Mary Filler, who was Plaintiff's direct report at TNG. (Id. at ¶ 70.)

- On June 26, 2020, Mastery "transferred Plaintiff out from all Mastery school accounts." (Id. at ¶ 35.) These accounts represented a large portion of the total volume of accounts managed by Plaintiff. Plaintiff's bonus was affected by this transfer, as bonuses were based on volume of accounts. (Id. at ¶ 39.)

- The accounts Plaintiff managed before the transfer were reassigned to her coworkers Fletcher Vollmer (white male) and Sarah Beigert (white female). (Id. at ¶ 37.)

- Mastery did not require Vollmer and Beigert to hold RRM status. Accordingly, they were free to "gain a wide variety of well-rounded and expansive food services and management exposure/knowledge base," an opportunity that Mastery did not afford Plaintiff because it required her to hold RRM status when she managed their accounts. In doing so, Mastery foreclosed Plaintiff from "interface[ing] with different school districts, work[ing] out various. . . issues that arise during the school year, [and] expand[ing] her knowledge of various state and school protocols," among other things. (Id. at ¶ 41.)

- On September 11, 2020, TNG terminated Plaintiff's employment with TNG.[2] (Id. at ¶ 92.)

On February 18, 2021, following receipt of a right-to-sue letter from the United States Equal Employment Opportunity Commission ("EEOC"), Plaintiff filed a complaint against Mastery alleging race and gender discrimination, hostile work environment, and retaliation claims under Title VII and the PHRA. On June 22, 2021, Mastery filed the present Motion to Dismiss. Mastery first argues that Plaintiff's claims should be dismissed because Plaintiff was not an employee of Mastery. Mastery additionally argues that Plaintiff fails to plead plausible claims of hostile work environment, discrimination, or retaliation.

## II. STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory allegations do not suffice. Id. Twombly and Iqbal's plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully." Id. Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal

---

[2] The exact date of Plaintiff's termination is not alleged in the Amended Complaint but is stated in a Declaration attached to Plaintiff's response in opposition to Mastery's motion to dismiss. (See ECF No. 18 at p. 22, ¶ 8).

evidence of the necessary elements of a claim." Phillips v. Cty. Of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

To determine the sufficiency of a complaint under Twombly and Iqbal, a court must (1) "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) identify the allegations that are not entitled to the assumption of truth because they are no more than conclusions; and (3) "where there are well-pleaded factual allegations, . . . assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Burtch v. Millberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011). Courts must construe the allegations in a complaint "in the light most favorable to the plaintiff." Id. at 220. When deciding a motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014) (quoting Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

### III. DISCUSSION

#### A. Mastery's Status as an Employer

As a threshold matter, Mastery moves to dismiss Plaintiff's Title VII and PHRA claims because Mastery never employed her and, therefore, she has failed to allege a necessary element of her Title VII and PHRA claims. See 42 U.S.C. § 2000. Mastery maintains that Plaintiff was always an employee of TNG, Mastery's food service vendor. Plaintiff responds that she has pled sufficient facts to show that she was also an employee of Mastery under both the common law master-servant standard and the dual and/or borrowed servant standard pursuant to the Restatement (Second) of Agency §§ 226, 227.

Under the common law master-servant standard for purposes of a Title VII claim, an employer is a party who possesses the "right to control the manner and means by which the [work]

5

product is accomplished." Faush v. Tuesday Morning, Inc., 808 F.3d 208, 214 (3d Cir. 2015). The following considerations, among others, may be relevant:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

Id.

In Faush, the plaintiff was employed by a staffing agency and placed at the defendant's store, where he was allegedly subjected to racial discrimination. Id. at 209. The placement was pursuant to a contract between the staffing agency and the defendant. Id. at 210. The defendant had no contract with the plaintiff and the plaintiff did not apply to work directly with the defendant. Id. The Third Circuit nevertheless held that the defendant exercised sufficient control over the plaintiff's work that a rational jury could conclude that an employment relationship existed. Id. at 215-20.

In support of this holding, the Third Circuit noted that, although the defendant could not directly fire employees of the staffing agency, it did have "ultimate control over whether" those employees were "permitted to work at its store." Id. at 216. The court further explained that the defendant had control over the plaintiff's "daily activities" because it "gave [him] assignments, directly supervised him, provided site-specific training, furnished any equipment and materials necessary, and verified the number of hours he worked on a daily basis." Id.

Mastery asserts that Plaintiff admits in her own Amended Complaint that she was not employed by Mastery, but rather she simply "represented" Mastery. While most of the accounts Plaintiff managed were Mastery accounts, Mastery notes that Plaintiff was also assigned to

6

accounts at other schools. Mastery also highlights that Plaintiff's supervisor, Ms. Filler, was the Vice President of Food Service at TNG, not Mastery.

However, Plaintiff's Amended Complaint alleges that when Mastery promoted her to Resident Regional Manager, Mastery provided her with a physical office at its central office building and required her to devote most of her time to its accounts. (Am. Compl. ¶¶ 23–24.) The Amended Complaint also alleges that Mastery made the decision to "transfer" her out of its accounts, affecting her bonus and effectively terminating her employment with them. (Id. ¶ 39.) Plaintiff also identified three supervisors at Mastery who controlled the manner of her work by requiring her to get their permission before hiring food service directors and hourly employees. These allegations resemble the manner of control exerted by the defendant in Faush.

Based on the aspects of Plaintiff's working relationship with Mastery explained above, Plaintiff has alleged sufficient facets of an employment relationship between her and Mastery under Title VII.

### B.  Plaintiff's Hostile Work Environment Claim

Mastery next moves to dismiss Plaintiff's hostile work environment claim based on race, color, and gender because she has not alleged facts demonstrating that she was subjected to discrimination that was severe or pervasive. Plaintiff argues that she has sufficiently pled a hostile work environment claim based on the pervasive discrimination that she was subjected to during her employment at Mastery.

In order to plausibly allege a hostile work environment claim under Title VII, a plaintiff must allege: (1) she suffered intentional discrimination because of her protected activity; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) it would have detrimentally affected a reasonable person in like circumstances; and (5) a basis for

employer liability is present. Torres v. Deblasis, 959 F. Supp. 2d 772, 782 (E.D. Pa. 2013). In other words, a "severe and pervasive" hostile work environment is substituted in place of a materially adverse employment action. See Hare v. Potter, 220 Fed. Appx. 120, 131–32 (3d Cir. 2007); Komis v. Perez, No. 11-cv-6393, 2014 WL 3437658, at *2 (E.D. Pa. July 15, 2014). To prove the second element, "a plaintiff must show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Torres, 959 F. Supp. 2d at 782 (internal quotations omitted). Isolated incidents, unless extremely serious, are insufficient. Id.

Mastery argues that Plaintiff "fails to allege a single incident in which she was exposed to any severe or pervasive harassment that was related, in any way, to her race, color, or gender." (Def.'s Br. at p. 15, ECF No. 15). Plaintiff points to Mastery's poor treatment of her and the food service directors under her management, who she alleges were all black. Plaintiff also generally avers that Mastery "micromanaged" her and her team, putting a grading system in place to assess their performance that was not used in the past. (Am. Compl. ¶ 67.) She also cites Mastery's general failure to respond to her repeated requests to implement safety precautions related to the COVID-19 pandemic, as well as excluding her from "important, time sensitive operational protocol decisions and information." (Id. ¶ 73.) She additionally recalls several instances in which Mastery supervisors yelled at her.

Even viewed in the light most favorable to Plaintiff, these circumstances do not plausibly plead a working environment existed that was so abusive that Plaintiff's working conditions were effectively altered. First, it is not clear how a failure to implement COVID-19 safety protocols could amount to discrimination at all, unless Mastery fulfilled requests for safety protocols from

8

other employees who were not part of a protected class, which Plaintiff does not allege. Regardless, the other allegations that Mastery micromanaged Plaintiff and her staff and occasionally yelled at her do not amount to harassment that could "permeate" the workplace such that it became "abusive."

Additionally, Plaintiff cannot show that she was subjected to pervasive discrimination based solely on examples of her supervisors at Mastery discriminating against others. For example, Plaintiff alleges that her three white supervisors, Buttil, Covino, and Cornelius, made demeaning statements towards kitchen staff and students who were black. She also alleges that Cornelius "refused to accept Plaintiff's professional opinion" that a black food service worker under Plaintiff's management should be given another account. (Am. Compl. ¶ 54.) Plaintiff also points to an incident in which Buttil expressed concern about giving an account to a black food service worker who was pregnant. None of these incidents involve discrimination against Plaintiff herself. Importantly, to sufficiently plead a hostile work environment claim, the discrimination needs to "detrimentally affect the *plaintiff*." Alston v. City of Phila., 859 Fed. Appx. 630, 631 (3d Cir. 2021) (emphasis added); see also Caver v. City of Trenton, 420 F.3d 243, 263 (3d Cir. 2005) ("[Plaintiff] cannot meet the first element of the hostile work environment claim under Title VII or the LAD—causation—*solely* by pointing to comments that were directed at other individuals. [Plaintiff] cannot show that the comments would not have been uttered or written but for *his* race if [Plaintiff] was neither on the receiving end nor the subject of any comments.") (emphasis in original).

Regarding Plaintiff's allegations about the incident in which Covino made a racially charged comment, I do not find the comment severe enough to support Plaintiff's hostile work environment claim. As explained above, Plaintiff alleges that a food service director under her

management submitted work orders that a building engineer did not respond to. The food service director then expressed her frustrations about this to Covino, who responded that she would follow up with the building engineer "because being a white woman" Covino knew "how to get what she needed from a white man." (Am. Compl. ¶ 50.) This is an isolated comment that was both (1) not directed at Plaintiff, and (2) not severe enough to create a hostile work environment. See Chinery v. Am. Airlines, 778 Fed. Appx. 142, 146 (3d Cir. 2019) (offensive Facebook posts written by coworkers in which plaintiff was harassed were "offhand comments and isolated incidents" not sufficiently severe or pervasive enough to support hostile work environment claim).

For the foregoing reasons, Mastery's motion to dismiss Plaintiff's hostile work environment claim will be granted.

### C.     Plaintiff's Race and Gender Discrimination Claims

To establish a *prima facie* case of racial or gender discrimination under Title VII, a plaintiff must show that: (1) she belongs to a protected class; (2) she is qualified for the position; (3) she suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination. Betts v. Summit Oaks Hosp., 687 Fed. Appx. 206, 207 (3d Cir. 2017). An adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." Torres, 959 F. Supp. 2d at 780 (internal quotations omitted). Examples of this kind of "significant change in employment status" include things like "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Id.

Mastery moves to dismiss Plaintiff's discrimination claims because she has not sufficiently alleged the third and fourth elements – that she suffered an adverse employment action, and that

10

the circumstances of such action gave rise to an inference of discrimination. First, Mastery argues that "requiring" Plaintiff to take RRM status is not an adverse employment action and even if it is, her claim would be barred by the statute of limitations. Mastery also argues Plaintiff's removal from the Mastery accounts does not constitute an adverse employment action and even if it does, Plaintiff has not set forth sufficient factual allegations connecting the decision to her race or gender. Plaintiff responds that she has sufficiently alleged race and gender discrimination claims based on disparate treatment because Mastery's transferring her from their accounts was an adverse employment action, and she has identified similarly situated comparators who were not required to take RRM status, and therefore could continue servicing other accounts.

Plaintiff seems to blend two different incidents together as the "adverse employment action" that she suffered. She complains about both Mastery's "requiring" that she become an RRM, and its ultimate decision to transfer her from her Mastery accounts. I will address each potential adverse action below.

        **1.**        **Plaintiff's Forced RRM Status**

Plaintiff first alleges that she suffered an adverse employment action when Mastery forced her to become an RRM, while allowing Vollmer and Beigert to remain as RM's. Plaintiff argues that this provided Vollmer and Beigert with the opportunity to "gain a wide variety of well-rounded and expansive food services and management exposure/knowledge base," which Plaintiff could not do as an RRM. (Am. Compl. ¶ 43.)

Mastery is correct that any Title VII claim based on this decision would be barred by the statute of limitations requiring that a charge of discrimination be filed with the EEOC within 300 days of the alleged unlawful employment decision. See 42 U.S.C. §2000e–5(e)(1). Plaintiff alleges that Mastery made her an RRM at the beginning of the 2018-2019 school year. (Am.

11

Compl. ¶ 22, 28.) But Plaintiff did not contact the EEOC until February of 2020, which is over 300 days after Mastery gave her the RRM title. Accordingly, any claim based on Plaintiff's forced RRM status would be time barred.

### 2. Plaintiff's Transfer from the Mastery Accounts

Next, Plaintiff alleges that Mastery's decision to transfer her from all her Mastery accounts was an adverse employment action in violation of Title VII. To support this allegation, Plaintiff notes that this transfer reduced her volume of accounts by 4,600 students. She also asserts that this reduction in volume of accounts affected her potential bonus.

I find that Mastery's decision to transfer Plaintiff from her Mastery accounts could qualify as an adverse employment action at this stage of the litigation. Plaintiff alleges that this decision essentially amounted to a termination, as Mastery had required her to dedicate most of her time to those accounts, depriving her of the opportunity to service other accounts. When Mastery removed her from those accounts, Plaintiff experienced a "reassignment with significantly different responsibilities." Torres, 959 F. Supp. 2d at 780. This loss of accounts also affected her compensation in the form of potential bonuses, as bonuses were determined by volume of accounts. (Am. Compl. ¶ 39.) At this early stage of the litigation, I find that these allegations sufficiently demonstrate that Plaintiff suffered an adverse employment action when she was transferred from the Mastery accounts.

### 3. The Fourth Element – Inference of Discrimination

Lastly, I must determine whether Plaintiff has connected Mastery's decision to remove her from the accounts to her race and gender. To adequately plead an inference of discrimination under the fourth element, a plaintiff must allege facts upon which a "court can infer that if the employer's actions remain unexplained, it is more likely than not that such actions were based on

12

impermissible reasons." Equal Employment Opportunity Comm'n v. Metal Serv. Co., 892 F.2d 341, 348 (3d Cir. 1990). There are several different ways a plaintiff can satisfy this element. One way is by asserting that she was treated less favorably than similarly situated employees outside of the protected class. Jones v. Sch. Dist. of Phila., 198 F.3d 403, 413 (3d Cir. 1999). While "similarly-situated" does not necessarily mean identically situated, the plaintiff must nevertheless be similar in "all relevant respects." Opsatnik v. Norfolk S. Corp., 335 Fed. Appx. 220, 222–23 (3d Cir. 2009) (citing Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)). Demonstrating that employees are similarly situated often includes a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Opsatnik, 335 Fed. Appx. at 223 (quotations omitted). Alternatively, a plaintiff can "rely on circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." Greene v. Virgin Islands Water & Power Auth., 557 Fed. Appx. 189, 195 (3d Cir. 2014).

      Mastery argues Plaintiff has failed to connect her removal from the Mastery accounts to her race or gender, and that the facts alleged in the Amended Complaint do not demonstrate that Mastery even played any role in reassigning the accounts to Plaintiff's white/male counterparts. Mastery also reiterates that it was TNG who ultimately fired Plaintiff, and she has not established that Mastery was involved in that decision.[3] Plaintiff responds that she has pled all four elements of a prima facie case of race and gender discrimination, as she has identified Vollmer and Beigert as similarly situated comparators who were treated more favorably than she was.

---

[3] This argument is not relevant to Plaintiff's prima facie case and is just an attempt to relitigate Mastery's status as her employer.

I find that, taking the facts pled in the light most favorable to the Plaintiff, she has pled a prima facie case of race discrimination by alleging that she was treated less favorably than her similarly situated white coworkers. It is not disputed that Plaintiff is a member of a protected class (race) and was qualified for the position she held at Mastery. Plaintiff has additionally alleged that Vollmer and Beigert, who are both white, were similarly situated to her because they all managed food service accounts for Mastery. While Plaintiff held the title of RRM and her coworkers were RM's, the allegations in the Amended Complaint indicate that this difference in titles did not alter their job responsibilities in any meaningful way. Plaintiff explains that being an RRM meant that Mastery demanded more of her time, precluding her from diversifying her account load. Nothing in the Amended Complaint suggests that Plaintiff's job responsibilities in actually managing Mastery accounts were different from Vollmer and Beigert's responsibilities in doing the same. And lastly, Plaintiff alleges that she was treated less favorably than her white coworkers when Mastery reassigned all of her accounts to Vollmer and Beigert.

While Plaintiff's allegations are sufficient to support her race discrimination claim at this stage, her Amended Complaint is completely devoid of any facts to support her gender discrimination claim. Although Vollmer is a man and some of Plaintiff's accounts were reassigned to him, Plaintiff's accounts were also reassigned to Beigert, who is a woman. Absent other facts to connect Mastery's decision to her gender, Plaintiff's gender discrimination claim must be dismissed.

For the foregoing reasons, Mastery's motion to dismiss Plaintiff's race discrimination claim will be denied, but the motion to dismiss her gender discrimination claim will be granted.

D.     **Plaintiff's Retaliation Claims**

Lastly, Mastery moves to dismiss Plaintiff's retaliation claim because Plaintiff has not pled that she complained to anyone at Mastery that she was a victim of discrimination.

To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." Nelson v. Upsala Coll., 51 F.3d 383, 386 (3d Cir. 1995). For purposes of the first prong of a prima facie case of retaliation, protected "opposition" activity includes not only an employee's filing of formal charges of discrimination against an employer but also "informal protests of discriminatory employment practices, including making complaints to management[.]" Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 135 (3d Cir. 2006) (quoting Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990)).

In determining whether a plaintiff adequately opposed discrimination, "we look to the message ... conveyed [by a plaintiff's conduct] rather than the means of conveyance." Moore v. City of Phil., 461 F.3d 331, 343 (3d Cir. 2006) (quoting Curay–Cramer, 450 F.3d at 135). The opposition must be to discrimination based on a protected category, such as race. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015). Furthermore, in making the opposition, the plaintiff must have an "objectively reasonable belief" that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute. Id. at 193–94. Lastly, to establish a causal connection between the protected activity and the adverse employment action, a plaintiff may rely on temporal proximity between the two events if it is "unusually suggestive." Wright v. Providence Care Ctr., LLC, 822 Fed. Appx. 85, 94 (3d Cir. 2020). "Where the time between the

15

protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee." Id. at 94–95 (quoting Marra v. Philadelphia Hous. Auth., 497 F.3d 286, 302 (3d Cir. 2007)).

Mastery argues that the only allegations Plaintiff cited in her Amended Complaint were complaints of alleged discrimination that she made to Ms. Filler, Vice President at TNG. Therefore, Mastery asserts that it could not have retaliated against Plaintiff for complaints she made to non-Mastery employees. In the alternative, Mastery argues that Plaintiff has failed to adequately plead causation, as her complaints to Filler were made four full months before she was removed from the Mastery accounts.

Plaintiff responds that she has plausibly alleged a claim for retaliation because: (1) she advocated on behalf of a black employee to be assigned to an additional school; (2) she challenged Mastery's treatment of a black employee who was pregnant; and (3) she complained to Ms. Filler about alleged racially discriminatory comments supervisors at Mastery made about Plaintiff. (Am. Compl. ¶¶ 52–54, 56–58, 62.) After Plaintiff took these actions, she alleges Mastery began retaliating against her.

Plaintiff's claim of retaliation based on the events described above fails in several respects. First, I find that Plaintiff has not sufficiently alleged that she engaged in protected activity when she advocated on behalf of her colleague regarding a staffing decision. The situation with the male colleague involved Plaintiff simply suggesting that the colleague be given an additional school to manage, and Cornelius responding that this was not permissible under state requirements. Plaintiff then complained that Cornelius "refused to accept [her] professional opinion" to provide the colleague with an additional school. (Am. Compl. ¶ 54.) The Amended Complaint is devoid of

16

any facts to suggest that Plaintiff complained any further or suggested to anyone at Mastery that she believed this incident amounted to unlawful discrimination based on the colleague's race.

Plaintiff also alleges that she suggested her pregnant black colleague be chosen to manage a Mastery account, and Buttil responded with concerns about hiring someone who will need to take leave due to pregnancy. Plaintiff then allegedly replied, "we need to be careful with saying that John because [the pregnant colleague] has not indicated to me that she could not work." (Am. Compl. ¶ 57.) Viewed in the light most favorable to Plaintiff, her comments to Buttil could be considered protected activity because she "identif[ied] the employer and the [illegal employment] practice – if not specifically, at least by context." Mikell v. Marriott Int'l, Inc., 789 F. Supp. 2d 607, 618 (E.D. Pa. 2011).

However, Plaintiff cannot establish a causal connection between this comment and Mastery's decision to transfer her from all her accounts. According to the Amended Complaint, the exchange between Plaintiff and Buttil occurred on February 25, 2020. (Am. Compl. ¶ 56–57.) Plaintiff was not transferred from her Mastery accounts until June 26, 2020, approximately four months later. (Id. ¶ 35.) The Third Circuit has held that shorter lapses of time are insufficient to be considered "unusually suggestive" of retaliation. Wright, 822 Fed. Appx. at 95 (two-to-three-month gap between protected activity and termination not unusually suggestive of retaliation). And even if the timing were unusually suggestive, the Amended Complaint is devoid of any facts connecting this incident with her termination four months later. Plaintiff's general allegations that she was micromanaged, sometimes excluded from meetings, and ignored when she reported COVID-19 protocol issues during that four-month time frame do not amount to antagonistic, retaliatory conduct sufficient to survive a motion to dismiss.[4] Jensen v. Potter, 435 F.3d 444, 450–

---

[4] While the parties dispute in their briefing whether Plaintiff's informal complaints constitute protected activity, I note that Plaintiff also filed a formal charge of discrimination with the EEOC

51 (3d Cir. 2006) (finding pattern of antagonism where after plaintiff reported her supervisor for sexual harassment, her co-workers habitually insulted her while explicitly expressing support for the supervisor who harassed her, physically threatened her with heavy equipment, and her vehicle was vandalized multiple times while parked in the company parking lot).

Lastly, Plaintiff cannot base her retaliation claim on the complaint she made to TNG Vice President Ms. Filler. Plaintiff complained to Filler that she believed Buttil was discriminating against her "because [Plaintiff] was an African-American female over the age of 40 years old." (Am. Compl. ¶ 62.) This informal complaint could be considered protected activity, but Plaintiff does not allege that anyone at Mastery was ever made aware of it. Mastery could not retaliate against Plaintiff for a complaint she made to a non-Mastery supervisor that was not communicated to anyone at Mastery. Moreover, Plaintiff's complaints to Filler that Mastery was "double claiming meals" and "not setting up distribution sites [and] social distancing practices" are not about discrimination and, thus, are not protected activity. (Am. Compl. ¶ 100.)

## IV.     CONCLUSION

Having taken all the Amended Complaint's factual allegations as true and in the light most favorable to Plaintiff, I find that Plaintiff has plausibly alleged a claim against Mastery for race discrimination, and Mastery's motion to dismiss that claim will be denied.

However, I also find that Plaintiff has failed to state a cognizable claim for hostile work environment, gender discrimination, or retaliation against Mastery, and amendment of those claims would be futile. The facts underlying Plaintiff's hostile work environment claim do not legally rise to the level of severe or pervasive discriminatory behavior. Moreover, Plaintiff has

---

on February 28, 2020. (Am. Compl. ¶ 3.) Formal charges of discrimination are considered protected activity. Curay–Cramer, 450 F.3d at 135. Regardless, just as with her informal complaints as explained above, Plaintiff has failed to allege a causal connection between her EEOC charge filed in February and her termination four months later in June.

not alleged any facts to suggest Mastery terminated her because of her gender. And lastly, Plaintiff cannot state a retaliation claim because she has failed to allege a causal connection between her protected activity and her termination. Accordingly, I will dismiss those claims against Mastery with prejudice.

      An appropriate Order follows.